Ranney, J.
The county of Fulton was established on the 28th of February, 1850, and its territory principally taken from Lucas county. 48 Local Laws, 682. At that *time it is agreed the county of Lacas was indebted for a much larger amount than could be paid from all the money remaining in its treasury, and for liabilities other than those contracted for public buildings.
But it is also admitted that there was then in the treasury a certain amount of money collected for bridge purposes, which was more than sufficient to pay all the debts due from that particular fund. This proceeding was instituted under section 4 of the act of June 1,1820 (Swan’s Rev. Stat. 255), to compel the commissioners of Lucas county to settle, and draw an order upon the treasury of that county, in favor of Fulton county, for such proportion of this fund, as the land and other taxable property thus included in the ’after, bears to that left in the former county. The district court, reversing the order of the common pleas, held, and we think correctly, that Lucas county was entitled to deduct all its just debts, except such as were contracted for public buildings, from this, as well as other funds in the treasury, before any division was required to be made.
By the second section of the act of 1820, it is provided, “ That when any new county shall be laid off and organized, the money which shall remain in the treasury of the county or counties, from .which the new county was taken, after deducting all just debts and demands which were due and owing at the time of sotting off the. new county, except such debts as shall have been contracted for public buildings, in the old county, shall be divided according to the land and other taxable property Avithin the new county, and the county or counties from which the new county was taken from which the tax was paid.”
The remainder of this and' the next section then proceed to prescribe the manner of ascertaining and paying the amount to which the new county may be entitled, and excepts from the money to bo divided, that donated to the old county, and the clear profit on the sale of county town-lots, the property of such old county.
^Without the aid of the statute, it will not be doubted, that Lucas county would, upon the division, have remained liable for all *443 the debts it was then owing, and entitled to all the money and property that then belonged to it. As this would be attended with injustice whore a surplus, collected from all the property within the county before the division, remained after deducting all that the county had paid out and all that it was liable to pay, the legislature-has undertaken to make an equitable division of such surplus, by providing, in effect, that so much of it as was paid by the retiring-portion of the county, might be withdrawn by them, and taken to the new county, into which they were incorporated. By the positive provisions of the statute, this right extends to all the money belonging to the old county and remaining in its treasury; and it is equally exjfiieit in allowing “all just debts and demands” to be first deducted from all the moneys thus liable to division, with one single exception—debts contracted for public buildings.
Now, it can not be denied that this bridge fund belonged to Lucas-county, and remained in its treasury when the new county was set off; nor is it readily perceived how a court can bo expected to make it an exception to either branch of the statute, when the law has-not made it so. The only reason suggested is, that it can only be applied to the purposes for which it was collected, and not to pay indebtedness contracted for other purposes. But this is sacrificing-substance to form. If, as between the old and the now county, the former is justly entitled to retain so much money as will pay existing indebtedness, which it would otherwise be obliged to raise by taxation, it is not difficult to see how this particular fund may as effectually relieve the tax-payers of the county, as if it could be directly applied to pay the indebtedness, by removing the necessity of levying additional, or as much taxes in future, for bridge purposes; and in the place of such levy, imposing a tax to pay the indebtedness. In short, if the old county, in justice, and under the-law, and not the new, is entitled to the fund, it can make no-^difference that it is restricted by law in the'application of it. That it is so entitled, and that the statute thus construed, does exact justice, we think very manifest.
The old county is still left liable for all the debts and liabilities-that have been incurred. They have been contracted upon the credit, and the consideration, we are bound to suppose, applied to-the benefit of the whole county as it existed before the division; and but for the division, the whole would be bound to contribute-to their payment. A part withdraw, and thereby escape the lia— *444 bility to future taxation for the purpose; but would it not be plainly inequitable to allow such part to withdraw the taxes it had .already paid, and leave what remained of the county, obliged by future taxation, to pay not only for what it had enjoyed, but also for what had actually gone to the benefit of the withdrawing part. 'The law is founded upon the .equity of the partnership rule, that makes the interest of the separate partners to consist of what remains of partnership effects after paying the partnership debts; .although it does not go to the extent of making each liable to contribute to make up any deficiency, but leaves the whole of that upon the remaining portion of the county.
The exception of debts contracted for public buildings remaining in the old county, is also grounded in the plainest justice. As these buildings thus become the exclusive property of the old county, they are fairly presumed to be worth as much as the .amount of any unpaid debt for their construction.
The judgment of the district court must be affirmed.